IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LARRY BENNETT, | § |
| | § |
| Plaintiff, | § |
| | § Civil Action No. 3:09-CV-0890-D |
| VS. | § |
| | § |
| MICHAEL J. ASTRUE, | § |
| COMMISSIONER OF SOCIAL | § |
| SECURITY, | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION

Plaintiff Larry J. Bennett ("Bennett") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits. For the reasons that follow, the Commissioner's decision is affirmed.

I

Bennett was born in 1960, attained a general equivalency diploma, and previously worked as a maintenance repair builder and a maintenance supervisor. He applied for a period of disability and disability insurance benefits on March 14, 2007, alleging that, beginning in December 2006, he became unable to work because of back pain, joint pain, fatigue, sleeplessness, breathing problems, high blood pressure, headaches, and fibromyalgia.

The Commissioner denied Bennett's application initially and on

reconsideration, and Bennett requested a hearing.  Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Bennett was not disabled.  The ALJ found at step one of the sequential evaluation process that Bennett had not engaged in substantial gainful activity since the alleged onset of his conditions.  At step two, the ALJ found that Bennett suffers from the severe impairments of hypertension (high blood pressure), obstructive airways disease, dyspnea (shortness of breath), sleep apnea, small fiber neuropathy, gout, degenerative joint disease, hepatitis C, thyroid disorder, and osteoarthritis.  At step three, the ALJ found that Bennett's medical problems did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that Bennett retained the residual functional capacity ("RFC") to perform and sustain a limited range of light work, albeit with limitations.  The ALJ then found at step four that Bennett could perform his past relevant work, because the work only required activities within his capabilities, given his RFC.  Bennett sought review by the Appeals Council, which denied his request. The ALJ's decision thus became the final decision of the Commissioner.

Bennett now seeks judicial review.  He contends on three grounds that the Commissioner's decision is erroneous: (1) the ALJ failed to make explicit findings regarding the mental and physical demands of Bennett's past relevant work, and this failure

prejudiced Bennett's case; (2) the ALJ's finding that Bennett can perform his past relevant work is not supported by substantial evidence; and (3) the ALJ failed to acknowledge or give proper weight to statements from Bennett's wife and treating physician.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala,* 38 F.3d

232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or that has lasted or could be expected to last for a continuous period of not fewer than 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett,* 67 F.3d at 563; *Martinez,* 64 F.3d at 173-74. The Commissioner must

consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2009). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and

(4) age, education, and work history.  *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).  "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified."  *Id.*  Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced."  *Id.*  The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced.  *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

The court first considers Bennett's contention that the ALJ failed to make explicit findings regarding the mental and physical demands of Bennett's past relevant work, and that this failure prejudiced him.

A

If an ALJ finds that a claimant can perform his past relevant work, the ALJ must make specific findings of fact regarding the claimant's RFC, the physical and mental demands of his past relevant work, and the claimant's "ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one."  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citing SSR 82-62, Soc. Sec. Rep. Serv., Rulings

1975-1982, 809). Relying in part on *Latham v. Shalala*, 36 F.3d 482 (5th Cir. 1994), Bennett maintains that the ALJ's findings regarding his past work are generic. In *Latham* the court held that if the ALJ determines that the claimant can return to his prior work, the ALJ must "directly compare the applicant's [RFC] with the physical and mental demands of his previous work." *Id*. at 484. The court also described the categories "light" and "medium" as "generic" terms that did not address all barriers to return to past relevant work. *Id*. In Bennett's case, the ALJ stated:

> At the hearing the vocational expert testified that the claimant's past work as a maintenance repair builder was skilled at the medium exertional level and his work as a maintenance supervisor was skilled at the light exertional level.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

R. 61. Bennett maintains that these two sentences are brief and generic, violate relevant regulations that bind the Commissioner, and make the Commissioner's decision reversible.

B

The court holds that *Latham* and the other authorities on which Bennett relies do not require reversal of the ALJ's decision. In *Latham* the ALJ found that the claimant had a number of nonexertional limitations. *See Latham*, 36 F.3d at 484 ("The ALJ concluded that Latham suffers from anxiety, depression and

deficiencies in concentration and social functioning."). In describing the claimant's capacity to return to work, however, the ALJ discussed categories that "refer[red] only to exertional capabilities and [did] not address mental or emotional barriers to a return to previous employment." *Id*. The *Latham* panel therefore faulted the ALJ for failing to "explain how these impairments do not prevent Latham from returning to his previous people-oriented employment." *Id*.;[1] *see generally Holman v. Astrue*, 2009 WL 3047418, at *10-*11 (N.D. Tex. Sept. 11) (Averitte, J.), *rec. adopted*, 2009 WL 3047418, at *1 (N.D. Tex. Sept. 23, 2009) (Robinson, J.) (holding that ALJ did not commit reversible error by using generic terms). But in Bennett's case, the ALJ found no nonexertional impairments. If this finding is supported by substantial evidence,[2] the ALJ did not commit reversible error by

---

[1]The statement in *Latham* is dicta. The court remanded the case to the ALJ based on the presence of new available evidence, not on the ALJ's verbal formulation in describing the claimant's past work. *See Latham*, 36 F.3d at 483. The court appears to have intended the comment to be additional instruction to the ALJ on remand. *Id*. at 484 ("Latham has [also] raised possible problems [with the ALJ's decision] . . ., which the Secretary should also consider when this case is remanded[.]"). Even so, it is firmly rooted in circuit precedent and in the Social Security Regulations.

[2]In his reply, Bennett suggests that because some evidence indicates that he may have nonexertional limitations, the ALJ was obligated to consider explicitly the mental requirements of his past relevant work. But this argument actually relates to the ALJ's findings regarding Bennett's impairment: specifically, whether he had any mental impairments. Bennett does not argue that the ALJ lacked substantial evidence to find that he had no severe mental impairments.

failing to address the mental requirements of Bennett's work. *See Rose v. Apfel*, 181 F.3d 943, 945 (8th Cir. 1999) (rejecting contention that ALJ erred in failing to make specific findings regarding mental demands of claimant's past work where ALJ had already determined that mental limitations did not significantly affect claimant's ability to work, and there was substantial evidence that claimant did not have severe mental impairment); *see also Shearer v. Astrue*, 2008 WL 5136949, at *4 (N.D. Tex. Nov. 13) (Bleil, J.) (rejecting contention that ALJ erred by failing to address mental demands of claimant's past relevant work where it was undisputed that claimant had no severe mental impairment; there was no evidence that her mental abilities otherwise declined after she ceased working as bakery manager; claimant graduated from high school, had 60 hours of college credit, and obtained certification as a teacher's aide; ALJ found no work-related mental restrictions; and claimant had not shown that ALJ's failure to assess mental restrictions was unsupported by substantial evidence), *rec. adopted*, (N.D. Tex. Dec. 5, 2008) (McBryde, J.).

Moreover, assuming *arguendo* that the ALJ erred by insufficiently describing the limitations on Bennett's past relevant work, this deficiency warrants a remand only if the error prejudiced Bennett. *See, e.g., Musgrove v. Astrue*, 2009 WL 3816669, at *8 (N.D. Tex. Nov. 13, 2009) (Kaplan, J.) (citing *Parker v. Barnhart*, 431 F.Supp.2d 665, 674 (E.D. Tex. 2006)

(holding that when ALJ fails to follow social security ruling, plaintiff seeking judicial review must also demonstrate prejudice arising from that error to be entitled to relief).  In *Latham*, and in *Hines v. Barnhart*, 2003 WL 23323615 (N.D. Tex. June 5) (Bleil, J.), *rec. adopted*, (N.D. Tex. July 8, 2003) (Means, J.), the two cases Bennett cites in which the court determined the ALJ's findings were too vague, the court remanded the cases on other grounds.  *See Latham*, 36 F.3d at 483 (remanding based on Appeals Council's failure to consider new evidence); *Hines*, 2003 WL 23323615, at *5-*6 (same).  Because the court was already remanding each case, it did not consider what prejudice, if any, resulted from the ALJ's error.

Here, assuming *arguendo* that the ALJ erred, the error did not prejudice Bennett.  In questioning Bennett, the ALJ explored the pertinent duties of Bennett's previous job.  And in the context of questioning the vocational expert, the ALJ asked Bennett to better describe certain physical demands of his prior job.  Given that the ALJ properly developed the record to determine the physical requirements of Bennett's past work, and still determined that Bennett was able to return to it, there is no reason to conclude that the disability determination would have been different had the ALJ used more specific language in describing Bennett's past work

experience.³  Even if the ALJ's description was too vague, Bennett was not prejudiced, and there is no basis to reverse the decision.

                                    IV

The court considers, second, Bennett's contention that the ALJ's finding that Bennett can sustain employment at his past relevant work is not supported by substantial evidence. Essentially, Bennett argues that although he may be able to obtain employment, any such employment, because of his disability, would be short lived.  He posits that because he presented evidence that his condition "waxed and waned," the ALJ was required to make an affirmative finding that he can maintain employment.

"In order to support a disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (per curiam).  In the usual case, the ALJ considers this issue by determining whether the claimant can obtain

---

³The ALJ's decision must "stand or fall with the reasons set forth in the ALJ's decision." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985)).  These cases, however, considered whether substantial evidence supported the ALJ's decision. Here, the court is addressing whether any error by the ALJ prejudiced the claimant. Considering the record that the ALJ developed, the court concludes that Bennett was not prejudiced.  In other words, were the court to remand the claim on this basis, the ALJ could, based on the record already developed, comply with *Latham*.

employment in the first place. *Id*. The ALJ must make a separate finding regarding the claimant's ability to maintain his employment where, "by [their] nature, the claimant's physical ailment[s] wax[] and wane[] in [their] manifestation of disabling symptoms." *Id*. A separate finding is not required unless (1) evidence suggests the "claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter," or (2) the ALJ indicates an appreciation "that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC." *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (per curiam). Testimony of "good days and bad days" is not sufficient to require the ALJ to make a separate assessment. *See Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). The court holds that there is substantial evidence that Bennett's condition did not affect his ability to maintain work in a way that was different from the way it affected his ability to obtain the work in the first place. Despite the presence of the symptoms that Bennett contends justify a finding of disability, Bennett was able to maintain his previous employment. The employer's stated reason for ending Bennett's tenure was unrelated to his physical impairments. Bennett testified he had no problems with absenteeism. The testimony of Bennett and his wife that Bennett's symptoms presented more strongly on some days versus others is insufficient to justify a separate determination.

Bennett also argues the episodic nature of his disability is supported by the testimony of his treating physician, Michael Freeman, M.D. ("Dr. Freeman"). Bennett states that Dr. Freeman asserted that Bennett's symptoms resulted from a "progressive weakening of the entire body" caused by an "unknown genetic degenerative muscle disease." P. Br. 15. But there is substantial evidence that suggests that Bennett's primary problem is sleep apnea. The treating physician referred Bennett to a neurologist who found no evidence of a neurological condition, but thought some of his symptoms could be related to sleep apnea, which had been diagnosed by other specialists.

The ALJ's finding also evidences an understanding that performing work on a regular and continuing basis is inherent in the definition of RFC. The ALJ twice stated that Bennett was able to both perform *and sustain* a range of light work.

The ALJ's decision is not reversible on the basis that he failed to address adequately the intermittent nature of Bennett's symptoms.

V

The court turns, third, to Bennett's contention that the ALJ failed to acknowledge or give proper weight to statements of Bennett's wife, Laura Bennett ("Laura"), and to his treating physician, Dr. Freeman.

- 13 -

A

Bennett argues that the ALJ failed to specify with sufficient clarity the actual weight given to Dr. Freeman's opinion. He also asserts that the ALJ discounted Dr. Freeman's opinion without showing good cause or performing the analysis required by 20 C.F.R. § 404.1527(d). Bennett posits that the ALJ could not reject Dr. Freeman's opinion, in favor of others' opinions, without first seeking clarification from Dr. Freeman.

B

The physician who primarily treats a claimant's disabling condition is generally the most familiar with the claimant's impairments, treatments, and responses. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). For this reason, the treating physician's opinion and observations carry great weight in the disability determination process. If the medical opinion of the physician who treats the claimant is well supported by standard clinical techniques and is not inconsistent with other substantial evidence on record, it must be given controlling weight. *Id.; see also* SSR 96-2P, 1996 WL 374188, at *1. But even if not afforded controlling weight, such opinions are entitled to deference, and their authority should be weighed by assessing the factors provided in 20 C.F.R. § 404.1527. SSR 96-2P, 1996 WL 374188, at *4. The ALJ must give specific reasons for the weight given to the treating physician's opinion. *Id.* at *5. The ALJ may assign the treating

physician's opinion little or no weight where good cause is shown. *Newton*, 209 F.3d at 455-56 (citing *Greenspan,* 38 F.3d at 237). Good cause exists where the opinion is conclusory or is otherwise unsupported by evidence derived from medically acceptable techniques. *Id*. If the treating physician's records are inconclusive or otherwise inadequate, and there is no other medical evidence based on a personal examination or treatment of the claimant, the ALJ must seek clarification or additional information from the treating physician. *Id*. at 453 (citing 20 C.F.R. § 404.1512(e).

C

The ALJ adequately specified the reasons Dr. Freeman's opinion did not control. The ALJ found the following: although Dr. Freeman diagnosed Bennett as having a number of problems, he only prescribed treatments for a few of them, and the overall course of treatment has been inconsistent with complete disability; while Dr. Freeman suggested a neurological disorder was at the root of the problem, a neurologist who treated Bennett found no neurological condition; Dr. Freeman's opinion rested in part on an undiagnosed and untreated condition; and Dr. Freeman's opinion varied sharply from other record evidence. The ALJ clearly set out why he rejected the treating physician's opinion. He was not required, as Bennett suggests, to ascribe an objective weight to Freeman's testimony. Here, the ALJ clearly found other medical evidence,

provided by physicians other than Dr. Freeman, to be most persuasive. The ALJ complied with the requirements of SSR 96-2P and *Newton* that he state the reason for his finding.

The ALJ also had a sufficient basis in the record to give less weight to Dr. Freeman's opinion. The opinion rested in large part on Dr. Freeman's conclusion that Bennett suffered from an unspecified neurological disorder. But there was substantial evidence in the record that this conclusion is unsupported surmise. In fact, a neurologist determined that Bennett suffered from no such disorder. The ALJ did not err in giving more weight to the specialist than to Dr. Freeman, who is not a specialist in this area. *See* 20 C.F.R. § 404.1527(d)(5).

Finally, the ALJ was under no duty to re-contact Dr. Freeman for the purpose of asking that he elaborate on his findings. Dr. Freeman's records were well developed, and records of other personal examinations were submitted. The ALJ did not find that there was an omission in Dr. Freeman's evidence, but rather that other evidence was entitled to greater weight. *Newton* does not, as Bennett suggests, require the ALJ to re-contact the treating physician before giving greater weight to other, properly considered medical evidence in the record.

D

Bennett finally argues that the ALJ erred by failing to consider the testimony of his wife or to give adequate reasons for

failing to credit her testimony. The Commissioner acknowledges the ALJ did not refer to Laura's testimony in the opinion. The Third Circuit has held that an ALJ must consider and weigh non-medical evidence, including the testimony of the claimant's wife. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). But the court need not reverse the ALJ's determination if the error would not change the result. *See, e.g., Qualls v. Astrue*, 339 Fed. Appx. 461, 464 (5th Cir. 2009) (per curiam) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988))). Here, Laura testified that a skin rash foretold the onset of a "bad episode," that some of Bennett's relatives had died from some sort of degenerative disease, and that she had purchased the couple scooters for mobility (but that Bennett did not use his). Her testimony arguably supports the credibility of Bennett's description of his symptoms. But the ALJ did not fail to credit evidence of Bennett's symptoms. Instead, he found that Bennett's condition did not fully prevent him from performing his past relevant work. The ALJ did not denigrate Bennett's statement of his conditions, but rather reached a conclusion based on medical evidence about the impact of his conditions.

Bennett's case is also unlike *Burnett* in that the ALJ has not here committed other reversible error. In *Burnett* the Third

Circuit reversed because the ALJ's determination at step three—that the claimant's condition was not a *per se* disability—was conclusory, precluding meaningful judicial review. *Id*. at 120. The ALJ also failed to address contradictory medical reports. *Id*. at 122.  Thus the failure to address the wife's (and the neighbor's) testimony was not the sole error.  As in *Latham* and *Hines*, the *Burnett* court had no reason to consider whether the ALJ's omission was alone prejudicial.

Bennett also argues that *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000), holds that a failure to take into consideration family members' testimony means that the ALJ's determination is unsupported by substantial evidence.  *Loza* involved the denial of a disability claim filed in 1993 by a Vietnam War veteran who in 1994 was declared by the Veterans Administration to be permanently and totally disabled.  *Id*. at 380.  Because of Loza's work history and disability insurance coverage, he could only be entitled to disability benefits if his disability existed between April 1979 and June 1980.  *Id*. at 381.  The ALJ found, in part, that there was no evidence of Loza's medical condition during that period.  *Id*. at 394.  The Fifth Circuit held that the ALJ had overlooked a variety of evidence of Loza's ongoing disability.  *Id*.  It stated that a retrospective diagnosis of Loza's condition could support a disability finding, and that lay evidence (such as offered by his family members) could substantiate that diagnosis.  *Id*. at 596.

- 18 -

Thus lay testimony was necessary to provide information for a medical analysis of the claimant's condition during the relevant time frame. No such retrospective diagnosis was required in Bennett's case.

The court accordingly holds that any error that the ALJ committed in not addressing Laura's testimony does not warrant reversing the ALJ's decision.

\* \* \*

The court concludes that the ALJ did not commit reversible error in concluding that Bennett is not disabled. Accordingly, the Commissioner's decision is

AFFIRMED.

January 27, 2010.

                                          SIDNEY A. FITZWATER
                                          CHIEF JUDGE